IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVNIA

| | | |
|---|---|---|
| LAURAN WEBB, individually and on behalf of others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action No.10-1414 |
| ENVISION PAYMENT SOLUTIONS, INC., | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM**

I

In this civil action, Plaintiff, Lauran Webb ("Ms. Webb"), asserts claims against Defendant, Envision Payment Solutions, Inc. ("EPSI"), a debt collector, for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, Pennsylvania's Fair Credit Extension Uniformity Act, 73 P.S. §§ 2270.1 *et seq.* ("FCEUA"), and Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 *et seq.* ("UTPCPL").[1] EPSI has filed a motion for summary judgment under Fed.R.Civ.P. 56. For the reasons set forth below, the motion will be granted.

---

[1] Ms. Webb's claims under the FCEUA and UTPCPL also were asserted against Giant Eagle, Inc. ("Giant Eagle"). However, in response to Giant Eagle's motion to dismiss the claims pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, Ms. Webb filed a notice of voluntary dismissal as to Giant Eagle under Fed.R.Civ.P. 41(a)(1)(A)(i).

1

II

In summary, Ms. Webb's complaint alleges the following facts:

In June 2010, Ms. Webb visited a Giant Eagle grocery store in Pittsburgh, Pennsylvania and purchased several consumer items. Ms. Webb paid for her purchases by means of two personal checks – one for $30.00 and one for $39.90. When the checks were returned by Ms. Webb's bank for insufficient funds, Giant Eagle sent her personal and banking information to EPSI. Thereafter, on October 1, 2010, EPSI caused Ms. Webb's bank account to be charged through an Automated Clearing House in the amount of the two checks issued to Giant Eagle in June 2010.

Ms. Webb never gave EPSI authorization to remove sums from her bank account and neither EPSI nor Giant Eagle provided notice to Ms. Webb that such action was going to be taken. In addition, Giant Eagle does not inform customers, either in writing or visually, of the potential involvement of a third party company in the event a check written by a customer for a purchase is returned for insufficient funds.

III

In support of its summary judgment motion, EPSI has submitted the declaration of Ruth Stayduhar, a Giant Eagle employee (Docket No. 27-2), and the affidavit of Darla Lowe, an employee of EPSI (Docket No. 27-3), which, in summary, state:

2

Giant Eagle operates supermarkets throughout the Pittsburgh area. As a courtesy, Giant Eagle offers a free personal check cashing service to customers who have a Giant Eagle Advantage Card.[2] (Docket No. 27-2, ¶¶ 2-3).

Giant Eagle operates a supermarket on Wharton Street on the South Side of Pittsburgh that is designated as Store #61. The Customer Service Desk of Store #61 is located at the front of the store across from the cashier lanes. On June 20, 2010, a copy of Giant Eagle's Advantage Card Check Cashing Policy, which is printed on 8½" x 14" yellow paper, was prominently posted in two places at the Customer Service Desk of Store #61. The first sentence of Section XI of the policy states: "In the event that your check is returned for insufficient or uncollected funds, we may re-present your check electronically." (Docket No. 27-2, ¶¶ 4-6, Exh. 1).

According to records kept in the ordinary course of Giant Eagle's business, on June 20, 2010 at 3:42 p.m., Giant Eagle cashed Check No. 5122 for Ms. Webb at lane 0036, which is the Customer Service Desk of Store #61. Nine minutes later, Giant Eagle cashed Check No. 5123 for Ms. Webb at checkout Lane No. 1 of Store #61. (Docket No. 27-2, ¶ 8).

---

[2] The Giant Eagle Advantage Card is Giant Eagle's customer loyalty program. (Docket No. 7, p. 1).

3

As part of its ordinary and regular business practices, Giant Eagle keeps a record of checks that are returned for insufficient funds at or near the time the checks are returned. Giant Eagle's business records show that the two checks written by Ms. Webb to Giant Eagle at Store #61 on June 20, 2010 were returned for insufficient funds. (Docket No. 27-2, ¶ 7, Exh. 2).

Giant Eagle retains EPSI to re-present checks that are written to Giant Eagle and returned for insufficient funds. On September 28, 2010, Giant Eagle referred the two checks written by Ms. Webb that had been returned for insufficient funds to EPSI for re-presentment, and EPSI caused the checks to be re-presented. In the regular course of its business, EPSI makes and keeps a record of letters mailed to debtors regarding their returned checks. Those records are kept at or near the time the letters are mailed. EPSI's records show that such a letter was mailed to Ms. Webb on September 28, 2010. The letter identified the checks that had been returned, the amounts and dates of the checks, the merchant to whom the checks had been written and the reason the checks were returned. The letter also included the following statement in capital letters: "YOUR CHECK(S) MAY BE

RE-PRESENTED ELECTRONICALLY WITH ADDITIONAL FEES WHERE APPLICABLE BY LAW."[3] (Docket No. 27-3, ¶¶ 2-7, Exhs. 1 and 2).

IV

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[4] To support an assertion that a fact cannot be, or is genuinely, disputed, a party must (a) cite to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers or other materials, or (b) show that the materials cited do not establish the absence or presence of a genuine dispute, or (c) show that an adverse party cannot produce admissible evidence to support the fact. Fed.R.Civ.P. 56(c)(1)(A) and (B). If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required

---

[3] The letter sent to Ms. Webb by EPSI on September 28, 2010 also included a fee of $30.00 for each returned check. However, Ms. Webb's complaint does not allege, and she has presented no evidence, that the fees were charged to her bank account by EPSI.

[4] Amendments to Fed.R.Civ.P. 56 became effective on December 1, 2010. The frequently cited standard for summary judgment is now set forth in Rule 56(a), rather than Rule 56(c). Although the wording of the standard has changed slightly, i.e., the word "issue" was replaced with the word "dispute," the change does not affect the substantive standard or the applicability of prior decisions construing the standard. Advisory Committee Notes to Fed.R.Civ.P. 56.

by Rule 56(c), the court may, among other things, grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it. Fed.R.Civ.P. 56(e). In this connection, the Court notes that Ms. Webb has not submitted any materials to controvert the facts established by EPSI through the declaration of Ms. Stayduhar and the affidavit of Ms. Lowe and the exhibits attached thereto.

V

Violations of the FDCPA

The declared purposes of the FDCPA include elimination of abusive debt collection practices by debt collectors and assurance that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged. 15 U.S.C. § 1692(e). FDCPA claims are evaluated under the *least sophisticated consumer* standard which is less demanding than one that inquires whether a particular debt collection communication would mislead or deceive a *reasonable* debtor. "Nevertheless, the least sophisticated standard safeguards bill collectors from liability for 'bizarre or idiosyncratic interpretations of collection notices' by preserving at least a modicum of reasonableness, as well as 'preserving a basic level of understanding and willingness to read with care [on the part of the recipient].'" Campuzano-

Burgos v. Midland Credit Mgt., Inc., 550 F.3d 294, 298-99 (3d Cir.2008), quoting Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir.2008).

i

Section 1692d of the FDCPA provides:

§ 1692d. Harassment or abuse

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
> (3) The publication of a list of consumers who allegedly refuse to pay debts, ....
> (4) The advertisement for sale of any debt to coerce payment of the debt;
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
> (6) ..., the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. § 1692d(1)-(6).

After consideration, the Court agrees with EPSI that re-presentment of Ms. Webb's returned checks cannot be construed as harassment under Section 1692d. The Advantage Card Check Cashing Policy posted at Giant Eagle's Store #61 on the date Ms. Webb wrote the checks at issue specifically stated that checks

returned unpaid for insufficient funds may be re-presented electronically, and, as noted by EPSI, even "[t]he least sophisticated consumer could not expect that if she issued a check returned for insufficient funds, it would never be re-presented for payment." (Docket No. 27-1, p. 7). In sum, there is no basis for a finding that EPSI harassed or abused Ms. Webb by causing her returned checks to be re-presented to the bank. Under the circumstances, judgment will be entered in favor of EPSI on Ms. Webb's claim under Section 1692d of the FDCPA.

ii

Section 1692g of the FDCPA provides in relevant part:

§ 1692g. Validation of debts

(a) Notice of debt; contents

    Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

        (1) the amount of the debt;
        (2) the name of the creditor to whom the debt is owed;
        (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
        (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

> \* \* \*

15 U.S.C. § 1692g(a).

The uncontroverted evidence submitted by EPSI in support of its motion for summary judgment shows that a validation of debt notice complying with the requirements of Section 1692g(a) was sent to Ms. Webb on September 28, 2010. (Docket No. 27-3, Exh. 2). Significantly, as noted by EPSI, Section 1692g(a) requires only that the validation of debt notice be "sent" by a debt collector. The debt collector need not also establish actual receipt by the debtor. <u>Mahon v. Credit Bureau of Placer County Inc.</u>, 171 F.3d 1197 (9th Cir. 1999). (Docket No. 27, p. 8). Accordingly, judgment also will be entered in favor of EPSI on Ms. Webb's claim under Section 1692g of the FDCPA.

### iii

Section 1692f of the FDCPA provides in relevant part:

> § 1692f. Unfair practices
>
> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> > (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly

> authorized by the agreement creating the debt or
> permitted by law.

\* \* \*

15 U.S.C. § 1692f(1).

The prohibition in Section 1692f(1) precludes a debt collector from adding any charge to the underlying debt unless that charge is authorized by law or the agreement creating the debt. F.T.C. v. Check Investors, Inc., 502 F.3d 159, 166 (3d Cir.2007). Ms. Webb alleges that EPSI violated this section of the FDCPA by causing her bank account to be debited in the absence of an agreement authorizing such action. After consideration, the Court concludes that Ms. Webb's claim under Section 1692f(1) is meritless.

As noted by EPSI, the agreements authorizing the two debits of Ms. Webb's bank account were the checks she wrote to Giant Eagle in June 2010: that is, in exchange for goods, services or currency from Giant Eagle, Ms. Webb agreed to pay the sums of $30.00 and $39.90. The debits to Ms. Webb's bank account in October 2010 were in the sums of $30.00 and $39.90. There is no allegation in the complaint, and no evidence was submitted in opposition to EPSI's summary judgment motion, that Ms. Webb's account was debited for any additional amounts representing

improper interest, fees, charges or expenses incidental to her principal obligation to Giant Eagle.[5]

Further, Ms. Webb has failed to identify any authority for the claim that she was entitled to notice by Giant Eagle that EPSI would be re-presenting her checks. (Docket No. 27-1, pp. 8-10). As noted by EPSI, the argument that it was unfair or unconscionable for any entity other than Giant Eagle to re-present her returned checks is "untenable because any business that receives dishonored checks from consumers would be hamstrung with collecting its own accounts despite an entire industry specifically tailored to engage in such functions." (Docket No. 38, p. 6). Based on the foregoing, judgment also will be entered in favor of EPSI on Ms. Webb's claims under Sections 1692f and 1692f(1) of the FDCPA.

**Violation of the FCEUA**

The FCEUA "establishes what shall be considered ... unfair or deceptive acts or practices with regard to the collection of debts" in Pennsylvania. 73 P.S. § 2270.2. A debt collector

---

[5] In her brief in opposition to EPSI's motion for summary judgment, Ms. Webb asserts that she was "forced to pay fees associated with the transaction, to Envision, when she was told Envision already had her account information and would take the fee anyway, with or without her consent." (Docket No. 33, p. 9). As noted by EPSI, the foregoing assertion does not raise an issue of fact because Ms. Webb has failed to submit any evidentiary materials to support the assertion. (Docket No. 38, p. 8). In any event, the Court notes that Giant Eagle's Advantage Card Check Cashing Policy specifically states: "The authorization of service charges and processing fees as permitted by state law may be debited from the same account by paper draft or electronically at our option." (Docket No. 27-2, Exh. 1).

11

violates the FCEUA if the debt collector violates any of the provisions of the FDCPA.[6] 73 P.S. § 2270.4.

Ms. Webb alleges that EPSI violated the FCEUA by making false, misleading or deceptive representations although she does not identify the specific representations that are the subject of this claim. (Docket No. 1, ¶ 21). To the extent this claim may be based on the letter sent to Ms. Webb by EPSI on September 28, 2010, the Court notes that she has failed to submit any evidence showing that any statement in the letter was false, misleading or deceptive. Because the allegations supporting Ms. Webb's claim against EPSI under the FCEUA are identical to the allegations supporting her FDCPA claim, and because the Court has determined the uncontroverted evidence establishes that EPSI's conduct did not violate the FDCPA, EPSI also is entitled to judgment as a matter of law on Ms. Webb's FCEUA claim.[7]

---

[6] The FCEUA also prohibits creditors from engaging in unfair or deceptive acts or practices and specifically sets out acts and practices by creditors that violate the statute. One of those provisions states: "..., without the prior consent of the consumer given directly to the creditor ..., a creditor may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, *a debt collector*, the attorney of the *debt collector* or the attorney of the creditor." 73 P.S. § 2270.4(3). Thus, as noted by Giant Eagle in the brief submitted in support of its motion to dismiss, its retention of EPSI to re-present Ms. Webb's two returned checks is, in fact, contemplated as a normal step in collecting an unpaid debt. (Docket No. 7, p. 7).

[7] Although the issue was not raised by EPSI, it does not appear that the FCEUA applies to checks that are returned for insufficient funds. As noted by Giant Eagle in its motion to dismiss the claims asserted against it by Ms. Webb, the FCEUA applies to *extensions of credit* and this case involves a cash transaction. (Docket No. 7, pp. 4-6).

Violation of the UTPCPL

The purpose of Pennsylvania's UTPCPL is to protect the public from fraud and deceptive business practices. Gardner v. State Farm Fire and Cas. Co., 544 F.3d 553, 564 (3d Cir.2008), citing Pirozzi v. Penski Olds-Cadillac-GMC, Inc., 605 A.2d 373, 375 (Pa.Super.1992). Any person who purchases or leases goods or services primarily for personal, family or household purposes and suffers an ascertainable loss of money or property as a result of any act or practice declared unlawful by the UTPCPL may bring a private action to recover actual damages or one hundred dollars ($100.00), whichever is greater.[8] 73 P.S. § 201-9.2(a).

In her complaint, Plaintiff alleges that EPSI violated 73 P.S. § 201-3.1 of the UTPCPL by "misrepresent[ing] ... the character, extent, or amount of the debt or its status in a legal proceeding." (Docket No. 1, ¶ 29.a.). The Court can find no support for this claim. First, as noted by EPSI, Section 201-3.1 of the UTPCPL addresses the Attorney General's authority to adopt rules and regulations to enforce and administer the UTPCPL. It has nothing to do with the conduct proscribed by the UTPCPL. (Docket No. 38, p. 7 n.2). Second, the only evidence

---

[8] With respect to Ms. Webb's claim under the UTPCPL, the Court notes that the first check written to Giant Eagle on June 20, 2010 was simply cashed. No purchase of goods or services was involved. As a result, the UTPCPL does not even apply to the $30.00 check that was returned to Giant Eagle for insufficient funds.

regarding representations made to Ms. Webb by EPSI is the validation of debt notice sent to Ms. Webb on September 28, 2010. However, Ms. Webb has failed to identify any misrepresentations in the letter that was based on information provided by Giant Eagle and matches the information on Ms. Webb's returned checks.

Ms. Webb also asserts a claim against EPSI under the UTPCPL's "catchall" provision which prohibits "any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi).[9] (Docket No. 1, ¶ 29.b.). A plaintiff may succeed under the catch-all provision of the UTPCPL by satisfying the elements of common law fraud or by otherwise alleging deceptive conduct. Hunt v. United States Tobacco Co., 538 F.3d 217, 219 (3d Cir.2008).

With respect to Ms. Webb's bare allegation of fraud, under Pennsylvania law, common law fraud requires: (1) a misrepresentation, (2) material to the transaction, (3) made falsely, (4) with the intent of misleading another to rely on it, (5) justifiable reliance resulted, and (6) injury was proximately caused by the reliance. Santana Products, Inc. v. Bobrick Washroom Equip., Inc., 401 F.3d 123, 136 (3d Cir.2005),

---

[9] Section 201-2(4) defines "unfair methods of competition" and "unfair or deceptive acts or practices," listing 21 specific types of conduct that violate the UTPCPL as well as a "catch-all" provision which prohibits It is the "catch-all" provision on which Ms. Webb's second UTPCPL claim is based.

14

citing Viquers v. Philip Morris USA, Inc., 837 A.2d 534 (Pa.Super.2003). Ms. Webb, however, has neither alleged the elements of common law fraud nor submitted evidence raising an issue of fact as to whether EPSI's action was fraudulent. Accordingly, EPSI is entitled to judgment on Ms. Webb's claim of fraud under the UTPCPL.

As to Ms. Webb's allegation that EPSI's actions amounted to deception likely to create confusion or misunderstanding, the Court can find no basis for this claim. Ms. Webb admits she wrote the two checks to Giant Eagle on June 20, 2010 that were returned for insufficient funds, and she has failed to submit a shred of evidence tending to show that *any* conduct by EPSI in connection with the re-presentment of the checks resulted in confusion or misunderstanding.

Finally, the absence of any ascertainable loss in this case precludes a claim under the UTPCPL. See 73 P.S. § 201-92(a). In June 2010, Ms. Webb wrote two checks to Giant Eagle totaling $69.90 without sufficient funds in her bank account to cover the checks, and, in October 2010, her account was debited in the total amount of $69.90 upon re-presentment of the checks. Under

the circumstances, EPSI also is entitled to judgment in its favor on Ms. Webb's UTPCPL claim.

*[Signature]*
Judge William L. Standish
United States District Judge

Date: May 31, 2011